Keith **HENDERSON** and Linda **Henderson,** Appellants,

v.

**CENTRAL POWER AND LIGHT COMPANY,** Appellee.

No. 13–97–194–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 27, 1998.

Rehearing Overruled Oct. 1, 1998.

Thomas Patrick Gordon, III, Sandra Cockran Liser, Cantey & Hanger, Fort Worth, for Appellants.

V. Elizabeth Ledbetter, G. Don Schauer, Schauer, Simank & Ledbetter, Corpus Christi, for Appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Keith and Linda Henderson appeal from a judgment n.o.v. denying them any recovery on their DTPA[1] claims against Central Power and Light Co. (CPL) for misrepresentations and unconscionable conduct concerning a power box that started a fire at the Henderson's house in Portland, Texas. We reverse and render judgment on the jury verdict.

The Hendersons purchased their Portland house in the late 1970s, had electrical service connected with CPL, and lived in the house for some eight or nine years, before they moved to Kansas and rented the house. At the time of the fire in January 1993, Tuffie and Vonnie Hudson rented and lived in the house and had electrical service from CPL reconnected in their name.

Electricity to the house flowed from electric lines belonging to CPL into a meter box assembly consisting of the meter base at which CPL's lines connected to lines flowing to the house, a cover to prevent access to the meter base, and an electric meter protruding

---

1. Texas Deceptive Trade Practices—Consumer Protection Act. TEX BUS. & COM.CODE ANN. §§ 17.41 *et seq.* (Vernon 1987).

through an opening in the enclosure. (See Photographs in Appendix A.) There was evidence in the record to suggest that the fire started due to corrosion at the point where the Hendersons' aluminum wires connected to the meter base. Although CPL claimed at trial that the meter enclosure and base belonged to the customer and should have been maintained by him, the enclosure was sealed by CPL and labeled with a warning to the customer not to open it.

CPL placed a seal on the meter enclosure which prevents access to the meter base and electrical connections by anyone other than CPL personnel. In addition to the seal, CPL also placed a warning label on the meter box, stating as follows: "WARNING Breaking the seal or tampering with this meter is hazardous and unlawful. Such acts will subject the customer to inspection and resealing charges, to damages and to prosecution. If removal of the seal is required, please call Central Power and Light Company."

Keith Henderson testified at trial that he never looked at the meter box other than to walk past it and see that it was there. He recalled that the meter box was sealed, and he assumed because of the seal that everything inside the box was CPL's property and that CPL would take care of it. Henderson further stated that he would have done something to maintain the connections in the meter box if he had known that it was his responsibility and that no one else was going to maintain them.

After the fire, certain Underwriters of Lloyds ("Lloyds") paid for damage to the Hendersons' home and joined the present action as their subrogee.

The Hendersons sued CPL for negligence, and for violations of the DTPA that were a producing cause of the fire. Specifically, the Hendersons claimed that CPL's seal locked them out of the meter enclosure and thereby led them to believe that its contents were being properly maintained by CPL, when in fact they were not.

The jury found that neither the Hendersons nor CPL were negligent, but did find that CPL engaged in a false, misleading or deceptive act or practice and in an unconscionable action or course of action that were producing causes of the Hendersons' damages.

CPL moved for judgment n.o.v. on the grounds that Lloyds, as the Hendersons' subrogee, was not a consumer and therefore not entitled to maintain the present DTPA cause of action, that the Hendersons were not consumers after they moved out of the house and rented to others, that no representation had been made by CPL that could have been a producing cause of the fire, and that a Public Utility Commission approved tariff relieved CPL of any duty to the Hendersons for maintenance of the wires and electrical equipment on the house.

The trial court granted CPL's motion for judgment n.o.v. and signed a take-nothing judgment denying all of the Hendersons' claims.

By their two points of error, the Hendersons and Lloyds complain that the trial court erred in disregarding the jury's findings and entering judgment n.o.v. against them on their claims against CPL for misleading and unconscionable conduct under the DTPA.

The law is clear that a judgment n.o.v. is proper only when the evidence is conclusive and one party is entitled to prevail as a matter of law, or when a legal principle precludes recovery. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); *Chachere v. Drake*, 941 S.W.2d 193, 195 (Tex. App.—Corpus Christi 1996, writ denied); *Reeves v. Western Co. of North America*, 867 S.W.2d 385, 390 (Tex.App.—San Antonio 1993, writ denied). Therefore, when reviewing a judgment n.o.v., we must review the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences supporting them and rejecting the evidence and inferences contrary to the findings. *Mancorp*, 802 S.W.2d at 227; *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). Furthermore, we must reverse where there is more than a scintilla of competent evidence to support the jury's findings. *Mancorp*, 802 S.W.2d at 228; *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

■ However, when the motion presents multiple grounds for judgment n.o.v. and the trial court fails to state the grounds on which it granted judgment n.o.v., the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion. *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991) (citing *Monk v. Dallas Brake & Clutch Serv. Co.,* 697 S.W.2d 780, 783–84 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)).

In the present case, the only reason asserted by the trial court for granting judgment n.o.v. was that "there is no evidence of probative force to sustain the verdict of the jury on D.T.P.A. questions 3 and 4 [which broadly submitted the DTPA theories of liability], and that a directed verdict in favor of Central Power and Light Company would have been proper." This leaves uncertain whether the trial court granted judgment n.o.v. because there was no evidence to show the necessary consumer status of the plaintiffs, no evidence of a misrepresentation, or no evidence to defeat the limitation of liability provisions of the tariff, all of which would negate the jury's findings on DTPA liability. Accordingly, we must address all possible grounds for the trial court to have granted judgment n.o.v.

### Consumer Status of Lloyds

■ CPL initially challenged the right of Lloyds to step into the Hendersons' shoes in asserting DTPA claims against CPL, on the ground that Lloyds has assets of more than $25 million and cannot be a DTPA consumer, even if the Hendersons were consumers.

■ Only a "consumer" has standing to sue under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50 (Vernon 1987); *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 706 (Tex.1983); *McAllen State Bank v. Linbeck Const. Corp.,* 695 S.W.2d 10, 21–24 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The DTPA defines a consumer as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987).

■ There is no dispute that Lloyds has assets of more than $25 million and that it could not by itself maintain consumer status in an independent action under the DTPA. CPL argues that Lloyds, as subrogee, must also independently meet the requirements of the DTPA with regard to this requirement of consumer standing. *See Trimble v. Itz,* 898 S.W.2d 370, 372 (Tex.App.—San Antonio), *writ denied,* 906 S.W.2d 481 (Tex.1995).

The court in *Itz* concluded that the legislature, having made no exception for subrogees in the statute, did not intend to allow an insurer/subrogee with more than $25 million in assets to sue under the DTPA. Accordingly, the *Itz* court required the insurer to qualify as a consumer in its own right and did not allow it to assume the consumer status of its insured/subrogor for purposes of pursuing a DTPA claim. *Itz,* 898 S.W.2d at 372. CPL fails to mention that in denying writ on *Itz,* the Texas Supreme Court specifically stated that it "neither approves nor disapproves of the court of appeals' discussion of the Deceptive Trade Practices Act." *Trimble v. Itz,* 906 S.W.2d 481 (Tex.1995) (per curiam).

Nevertheless, even assuming that *Itz* is correct, the present case may be distinguished by the fact that the original consumers, the Hendersons are plaintiffs in this lawsuit, seeking their damages against CPL. Even *Itz* recognized the right of an insurer to pursue a valid subrogation claim in a DTPA lawsuit brought by its insured/subrogor. *Itz,* 898 S.W.2d at 372 (citing *McAllen State Bank,* 695 S.W.2d at 24 n. 5, where the bank's insurer/subrogee intervened in the action and asserted its own subrogation claim under the DTPA).

Therefore, in the present case, we hold that Lloyds properly joined its subrogation claim to the Hendersons' own DTPA claim against CPL, and that Lloyds, through the Hendersons, has consumer status under the DTPA.

### Consumer Status of the Hendersons

■ CPL next argued that the Hendersons were not consumers, because it did not provide electrical power to them.

■ Whether a plaintiff is a consumer under the DTPA is a question of law for the trial court to determine from the evidence. *Garner v. Corpus Christi Nat. Bank*, 944 S.W.2d 469, 477–78 (Tex.App.—Corpus Christi 1997, writ denied); *First Federal Sav. & Loan Ass'n v. Ritenour*, 704 S.W.2d 895, 898 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). To establish DTPA consumer status, a plaintiff must have sought or acquired goods or services by purchase or lease, and goods or services purchased or leased must form the basis of the complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex.1987); *Garner*, 944 S.W.2d at 477–78. Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA, which is established by his relationship to the transaction, not by a contractual relationship with the defendant. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366 (Tex.1987); *Flenniken*, 661 S.W.2d at 707; *Tuscarora Corp. v. HJS Industries, Inc.*, 794 S.W.2d 435, 441 (Tex.App.—Corpus Christi 1990, writ denied).

In the present case, although the Hudsons were the only consumers of the electrical power provided by CPL, we conclude that the relationship between CPL, the Hendersons, and their renters was more complicated than CPL suggests. CPL provided not only electrical power to the renters, but electrical hardware and the services necessary to keep that hardware in safe condition for the Hendersons.

■ While we have held that a person who has no relationship to the sales transaction may not be a consumer of such goods or services under the DTPA, *See Lara v. Lile*, 828 S.W.2d 536, 541–42 (Tex.App.—Corpus Christi 1992, writ denied) (employee or contractor working around, and injured by, the purchased services or equipment), the Hendersons as homeowners had a direct relationship to the transmission of electrical power through their residence, whether or not they were using or paying for the electricity. Moreover, the services and hardware associated with the safe transmission of that power were more than merely an incidental benefit of the underlying contract for power between CPL and the Hudsons. *Cf. Vinson & Elkins v. Moran*, 946 S.W.2d 381, 408 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (legislature did not intend to confer consumer status on third parties who may only incidentally benefit or be damaged by the provision of goods or services to another). It is common knowledge that electricity is a dangerous substance which can cause death and destruction if not properly handled. Accordingly, though not consumers of electricity, the Hendersons, as homeowners, were consumers of the ancillary goods and services provided by CPL in connection with providing electricity to the residence in a safe and responsible manner. Therefore, the Hendersons were "consumers" under the DTPA and were entitled to maintain the present cause of action against CPL.

### No Evidence of DTPA Misrepresentation

■ CPL argued in its motion for judgment n.o.v. that there was no evidence of a misrepresentation which could have been a producing cause of the fire. The Hendersons contend that the seal and warning label which told them not to enter the meter box amounted to an implied misrepresentation that CPL was responsible for maintaining the contents of that box.

Violation of an implied representation has been held to constitute a "laundry list" violation under the DTPA.[2] *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 898 (Tex.App.—Austin 1997, writ denied) (when car dealer took possession of vehicle for purpose of appraising its trade-in value, it impliedly represented that it would not sell the vehicle until the transaction was complete ); *Rickey v. Houston Health Club, Inc.*, 863 S.W.2d 148, 151 (Tex.App.—Texarkana 1993, writ denied) (when health club held out its astroturf track as a jogging track, it impliedly represented

---

2. TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon 1987).

that the track was safe for jogging); *Lone Star Ford, Inc. v. McGlashan,* 681 S.W.2d 720, 724 (Tex.App.—Houston [1st Dist.] 1984, no writ) (when a dealer represents he can sell a used vehicle, he necessarily represents he can transfer a legal title to the new owner); *Chambless v. Barry Robinson Farm Supply,* 667 S.W.2d 598, 602 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) (by displaying the tractor with the clevis on it, dealer impliedly represented that the clevis would be included in the sale of the tractor).

In the present case, the jury could reasonably infer that the seal and warning label placed on the meter enclosure amounted to an implied representation by CPL that it owned and would maintain in safe condition everything within the enclosure. Further, as a result of that implied representation, Keith Henderson testified that he did not perform maintenance that he otherwise would have performed on the meter box. Accordingly, we conclude that there was evidence to support the jury's finding of an actionable misrepresentation under the DTPA.

In addition, even if there had been no evidence of a misrepresentation, the Hendersons' right to recover under the DTPA may still be supported on another basis.

■ ■ CPL failed to challenge the alternate finding by the jury that its conduct amounted to an "unconscionable action or course of action that was a producing cause of damages." A finding that the defendant engaged in an unconscionable act or course of action is sufficient to support a DTPA action even in the absence of specific misrepresentations. *Wheeler v. Yettie Kersting Memorial Hosp.,* 866 S.W.2d 32, 49 (Tex.App.—Houston [1 st Dist.] 1993, no writ); *Teague v. Bandy,* 793 S.W.2d 50, 54 (Tex.App.—Austin 1990, writ denied); *Commercial Escrow Co. v. Rockport Rebel, Inc.,* 778 S.W.2d 532, 538 (Tex.App.—Corpus Christi 1989, writ denied); TEX. BUS. & COM.CODE ANN. § 17.50(a)(3) (Vernon 1987).

In the present case, the sealing of the meter box which prevented the Hendersons from maintaining its contents did not necessarily depend upon a misrepresentation in order to have independently been considered

unconscionable as "tak[ing] advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *See* TEX. BUS. & COM.CODE ANN. § 17.45(5) (Vernon 1987). Accordingly, absent a proper challenge by CPL, the Hendersons were entitled to judgment on the verdict of the jury with regard to the unconscionability finding, regardless of whether there was evidence to show a misrepresentation.

■ ■ Moreover, had CPL wanted to attack the jury's verdict on the ground that there was no evidence of unconscionable conduct, it was required to bring a cross-point in this court to preserve such complaint. When a trial court has entered an erroneous judgment notwithstanding the verdict, the appellate court must reverse the trial court's judgment and enter judgment in harmony with the verdict, unless the appellee presents by cross-points grounds sufficient to vitiate the jury's verdict or to prevent affirmance of the judgment had one been entered on the verdict. *See* TEX.R.APP. P. 38.2(b)(1); TEX.R. CIV. P. 324(c); *Miller v. Bock Laundry Machine Co.,* 568 S.W.2d 648, 652 (Tex.1977); *De Los Santos v. Alamo Lumber Co.,* 683 S.W.2d 48, 51 (Tex.App.—San Antonio 1984, no writ). CPL raised no cross-point attacking the finding on unconscionability aside from challenging consumer status and raising the tariff as a defense.

### Provisions of the Tariff

■ ■ CPL finally contended by its motion for judgment n.o.v. that a tariff filed with the Public Utility Commission absolved it of all liability for its conduct in connection with the power lines and equipment which form the basis of the present DTPA claim.

■ ■ A tariff is a document which lists a public utility's services and the rates for those services. *Southwestern Bell Telephone Co. v. Metro–Link Telecom, Inc.,* 919 S.W.2d 687, 691 (Tex.App.—Houston [14 th Dist.] 1996, writ denied). Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law. *Auchan USA, Inc. v. Houston Lighting & Power Co.,* 961 S.W.2d

197, 201 (Tex.App.—Houston [1 st Dist.] 1996, pet. granted); *Metro–Link Telecom, Inc.*, 919 S.W.2d at 692; *Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 829 (Tex.App.—Corpus Christi 1991, writ denied). Tariffs thus amount to a binding contract between the utility and its customers. *Auchan USA, Inc.*, 961 S.W.2d at 200; *Roberts Exp., Inc. v. Expert Transp., Inc.*, 842 S.W.2d 766, 771 (Tex.App.—Dallas 1992, no writ); *Common Carrier Motor Freight Ass'n, Inc. v. NCH Corp.*, 788 S.W.2d 207, 209 (Tex.App.—Austin 1990, writ denied); *see also Vollmer*, 805 S.W.2d at 830 (tariff also represents the utility's "contract with the State").

In the present case, CPL's tariff in effect at the time of the fire provided, in pertinent part:

> The Company [CPL] does not assume any duty of inspecting the Customer's wiring, apparatus, machinery, or equipment, and will not be responsible therefor. It is particularly understood that the customer assumes full responsibility for electric current, and for the wires, apparatus and appurtenances used in connection therewith, upon Customer's premises and at and from the point of delivery of power (described as being the point where the electric energy first leaves the lines or facilities of the Company and enters the lines or facilities provided and/or owned by the Customer) if such point is located off Customer premises, and will protect, indemnify and save Company harmless from all claims for injury, including death, or damage to person or property occurring upon Customer's premises, or at and from such point of delivery, even if due to Company's negligence, whether sole or joint and concurrent with the negligence of Customer or third parties, occasioned by such electric current or said wires, apparatus or appurtenances.

■ The record in the present case further contains a pre-trial order indicating that the Hendersons stipulated that they were "customers" for purposes of the tariff. However, parties may stipulate only to facts, and courts are not bound by stipulations to legal conclusions to be drawn from the facts of the case. *C & A Investments, Inc. v. Bonnet Resources Corp.*, 959 S.W.2d 258, 261 (Tex. App.—Dallas 1997, writ denied); *Cartwright v. MBank Corpus Christi, N.A.*, 865 S.W.2d 546, 549 (Tex.App.—Corpus Christi 1993, writ denied); *Martinez v. Hardy*, 864 S.W.2d 767, 770 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Smith v. Morris & Co.*, 694 S.W.2d 37, 39 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

We do not agree that the Hendersons were in fact customers of CPL in view of the undisputed evidence at trial that the Hudsons alone purchased power from CPL at the time of the fire. A "customer" is generally defined as "[o]ne who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business." BLACK'S LAW DICTIONARY 348 (5 th ed.1979). The Hendersons ended their purchases and business dealings with CPL when they moved out of the house and rented it to others. Nor did the Hendersons agree to be bound by the tariff and its limitations of liability by the fact that their renters chose to purchase power from CPL.

■ While the Hendersons were "consumers" for DTPA purposes, that status was dependent not upon contract with CPL, but upon their relationship to the transaction. *See Birchfield*, 747 S.W.2d at 366; *Flenniken*, 661 S.W.2d at 707. Accordingly, though consumers under the DTPA, the Hendersons are not "customers" under the tariff absent a contractual relationship with CPL, which they did not have. Moreover, they could not stipulate to a relationship which legally did not exist.

■ However, even if they had been customers of CPL covered by the tariff, the present cause of action for DTPA violations was not abrogated by that tariff. We acknowledge that, unless found to be unreasonable, tariff limitations do apply to DTPA claims. *Vollmer*, 805 S.W.2d at 830; *Southwestern Bell Tel. Co. v. Nash*, 586 S.W.2d 647 (Tex.Civ.App.—Austin 1979, no writ). In the present case, however, though there may be nothing unreasonable in the tariff limitations themselves, yet it would be unreasonable to apply them to the present DTPA claims for

misrepresentation and unconscionability, precisely because the present claims allege that CPL effectively misrepresented the customers' duties and affirmatively prevented them from performing maintenance that the tariff would otherwise require the customers to perform.

■ As a general rule, performance is excused when a party to a contract prevents the other party from performing and thereby repudiates the contract. *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 239 (Tex.App.— Corpus Christi 1994, writ denied); *Sage Street Associates v. Northdale Construction Co.,* 809 S.W.2d 775, 777 (Tex.App.—Houston [14th Dist.] 1991), *aff'd,* 863 S.W.2d 438 (Tex. 1993). In the present case, we similarly conclude that public policy forbids CPL from relying on its tariff to excuse it from the consequences of preventing its customers from performing the very maintenance services that it seeks to place upon them by

virtue of the tariff. To the extent that CPL's own actions prevented its customers from complying with the maintenance provisions of the tariff, we hold that CPL has repudiated the tariff and its customers are excused from such duties, and that the maintenance and limitation of liability provisions of the tariff are unenforceable.

Having determined that each ground alleged by CPL to support its judgment n.o.v. is invalid, we sustain the Hendersons' points of error.

We REVERSE the judgment of the trial court and here RENDER judgment in accordance with the verdict and stipulations of the parties that the Hendersons recover actual damages in the amount of $66,790.34, reasonable and necessary attorney's fees of $110,925.99, and $2,000 in penalties under the DTPA.[3]

3. *See* Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 1987) (amended by Acts 1995, 75th Leg., ch. 414 § 5, eff. Sept. 1, 1995).

APPENDIX A

DEFENDANT'S
EXHIBIT
CPL 144.
#90-2248-F

DEFENDANT'S
EXHIBIT
CPL 145.
#90-2248-F