NUMBER 13-98-519-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


MARY ANN RIVERA,

ET AL. 
Appellants,

v.



CENTRAL POWER AND LIGHT

COMPANY, ET AL. Appellees.

____________________________________________________________________


On appeal from the 377th District Court of Victoria County,

Texas.

____________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Hinojosa and

Yañez 

Opinion by Justice Yañez






 Mary Ann Rivera appeals a judgment rendered in favor of Central
Power and Light Company ("CP&L"). We affirm.

 This case arises from the death of Eva Gaytan, which occurred
while she was receiving dialysis treatment at the Victoria Dialysis
Center ("the Center"), in Victoria, Texas. On October 26, 1995, as
Gaytan was being treated, a waste disposal truck traveling down the
alley behind the Center caught a utility line leading from a utility pole to
the Center. The utility line connected to the Center via a riser, which is
a mast attached to the building, to which overhead wiring is connected. 
The riser pulled loose from the Center and fell, pulling down all of the
wiring connected to the Center. The wiring which was pulled down in
the accident included the sole electrical line to the Center. The Center
lacked a secondary source of electricity, so the power outage left the
room with the dialysis equipment in darkness, and rendered the
equipment inoperative. The staff of the Center attempted to continue
Gaytan's treatment by manually operating the dialysis equipment,
however, in the course of their attempt, air was pumped into Gaytan's
bloodstream, ultimately causing a fatal heart attack. Gaytan's daughter,
Mary Ann Rivera, brought suit against several defendants, including
CP&L. Rivera alleged that CP&L was negligent and sought recovery for
wrongful death. Rivera also alleged that CP&L had committed the tort
of intentional infliction of emotional distress upon Gaytan. CP&L filed
a motion for summary judgment and, following a hearing, the trial court
granted CP&L's motion. By five points of error, Rivera challenges the
trial court's granting of summary judgment in CP&L's favor.

 Rivera argues in her first three points of error that the trial court
erred in: (1) not finding CP&L had a duty upon inspecting its power line
to eliminate a dangerous condition; (2) not finding that CP&L breached
a duty, and that such breach was the proximate cause of Gaytan's
death; and (3) not finding that Rivera provided sufficient evidence of all
of the elements of negligence to defeat a summary judgment motion.

 To find a party liable for negligence, it must be shown that the
party had a duty, breached that duty, the breach was the proximate
cause of the plaintiff's injuries, and damages resulted from that breach. 
Bird v. W.C.W. 868 S.W.2d 767, 769 (Tex. 1994). Rivera failed to
demonstrate that CP&L breached a duty which caused Gaytan's
demise. The parties agree that CP&L inspected the power line leading
to the Center only a few weeks prior to the accident. Several lines ran
from the utility pole to the riser. Although there is some dispute over
the exact height of CP&L's line, the evidence presented at the hearing
demonstrated that the lowest line into the Center was a telephone line,
which belonged to Southwestern Bell Telephone ("SWB"), not CP&L. 
No evidence was ever produced that the disposal truck actually struck
CP&L's line, but rather that one of the lower lines was snagged, and
this resulted in the riser being pulled down, taking with it CP&L's line. 
At the time of its inspection, CP&L notified the Center that the power
line was at a safe height, but that the telephone line was possibly too
low. The CP&L inspector suggested that the Center contact SWB about
the telephone line. Rivera argues that CP&L had a duty to notify SWB
that the telephone line might be too low. However, Rivera fails to
explain how CP&L incurred a duty, upon inspecting its own lines, to
contact other utilities about other lines. Even if CP&L had some duty to
make others aware of the potential for problems with another utility's
line, CP&L would have discharged that duty when it notified the
personnel at the Center that the SWB line was the lowest line, and
suggested that the Center contact SWB.

 CP&L made certain that their line was high enough to be safe. 
CP&L introduced affidavits from the CP&L employee who inspected the
line prior to the accident. He stated that the line was connected at a
safe height, and further noted that it was attached to the highest point
on the Center's riser. The inspection preceded the accident by
approximately three weeks. During that time, the alley was traversed
several times by the same waste disposal truck which ultimately pulled
down the wiring. CP&L introduced a photograph as summary
judgment evidence which showed that the CP&L line was, in fact,
attached at the highest possible point. CP&L also introduced an
affidavit from a CP&L employee who responded to the accident. He
stated that the CP&L line was still attached to the Center's riser, which
had been pulled down and was lying on the ground. Rivera produced
no evidence to counter CP&L's evidence that its line was the highest
one over the alley, and was a safe height.

 Even if there was evidence to suggest that the CP&L line was too
low, it is undisputed that it was the highest one attached to the
Center's riser. The Center had the duty to provide a riser that would
keep the CP&L line high enough to meet any applicable safety
regulations, as is stated in CP&L's tariff. A tariff is a document which
lists the services provided by a utility and governs the relationship of
the utility and its customers. Henderson v. Central Power & Light Co.,
977 S.W.2d 439, 447 (Tex. App.--Corpus Christi 1998, pet. denied);
Southwestern Bell Tel. Co. v. Metro-Link Telecom, Inc., 919 S.W.2d
687, 691 (Tex. App.--Houston [14th Dist.] 1996, writ denied). Unless
found to be unreasonable, a filed tariff has the force and effect of law. 
Id. The tariff in this case clearly states that:

If Customer is served by an overhead distribution system, he
will provide a suitable point of connection adequate to
properly support [CP&L's] service conductors and high
enough above ground for [CP&L] to maintain ground
clearance for its service conductors in accordance with local
codes and the National Electric Safety Code requirements. 


The Center carried the duty of providing a mast which would lift the
electric line high enough to avoid being snagged.(1) Rivera never argued
that the tariff was unreasonable.

 CP&L inspected their line, ascertained that it was attached at the
highest point available, and notified the Center that if there was any
potential for an accident, it was with the telephone line, not the CP&L
line. Rivera has failed to show that CP&L breached any duty in this
incident. Points of error one, two, and three are overruled.

 Rivera contends in her fourth point of error that fact questions
exist which preclude summary judgment. The question of whether a
legal duty exists under a set of facts is a question of law. Bird, 868
S.W.2d at 769. Taken as true, Rivera's allegations fail to demonstrate
any duty owed by CP&L which was breached in this incident. Rivera,
as a matter of law, has failed to meet the first element of a claim of
negligence, thus there are no fact questions which would preclude
summary judgment for CP&L. Point of error number four is overruled.

 Rivera's fifth point of error is that the trial court erred in granting
summary judgment on her claim of intentional infliction of emotional
distress. The elements of the tort of intentional infliction of emotional
distress are: 1) the defendant acted intentionally or recklessly; 2) the
conduct was extreme and outrageous; 3) the actions of the defendant
caused the plaintiff emotional distress; and 4) the emotional distress
suffered by the plaintiff was severe. Twyman v. Twyman, 855 S.W.2d
619, 621 (Tex. 1993). We do not find that CP&L engaged in any
extreme or outrageous conduct in the instant case. CP&L inspected its
lines, determined they were safe, and reported to the Center that it
needed to contact the entity responsible for the lowest line leading into
the Center. CP&L's conduct was reasonable, and does not support a
claim of intentional infliction of emotional distress. Point of error
number five is overruled.




 The judgment of the trial court is AFFIRMED.


 ____________________________________

 LINDA REYNA YAÑEZ

 Justice



Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this

the 10th day of August, 2000.

1. Rivera introduced evidence that regulations in effect in the city
of Victoria, Texas, required the power lines to be at least eighteen
feet above the ground. The disposal truck which snagged the line
and pulled the riser down was shown to be less than fourteen feet
high at its highest point.