6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00067-CV


______________________________





IN RE: DANNY PAUL JOHNSON








 


Original Mandamus Proceeding







 
 



Before Cornelius, C.J., Grant and Ross, JJ.

Opinion by Chief Justice Cornelius



O P I N I O N


 Danny Paul Johnson has filed a petition asking this Court to issue a writ of mandamus against
the Honorable Danny Crooks, County Judge of Titus County. We have reviewed Johnson's petition. 
Johnson states that he is incarcerated, that he waived his right to counsel, and that the judge has
refused every demand that he has made, thus stripping him of his ability to present a defense against
a number of charges. He argues that he is thereby being denied access to the court system and that
this is a constitutional violation. 

 A writ of mandamus will properly issue only when the mandamus record establishes that (1)
the respondent has committed a clear abuse of discretion or has violated a duty imposed by law, and
(2) there is an absence of a clear and adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131
(Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Johnson does not show that
he is being denied access to the courts, nor does he provide any information to show that the trial
court has in any respect acted improperly. In the absence of any information to clearly show that
the trial court has violated a duty imposed by law and that no other remedy exists, mandamus relief
is not available.





 The petition for writ of mandamus is denied.


 William J. Cornelius

 Chief Justice


Date Submitted: May 21, 2002

Date Decided: May 21, 2002


Do Not Publish



 not a consumer under the
DTPA. 

 In 1998 Williams purchased a 1997 Pontiac Firebird vehicle from USA Auto Sales in Dallas,
owned by Charles Roberts, an estranged son of Stephen Roberts, for $6,300. The vehicle was
delivered to Bobby Deaton, a mechanic working for Williams, to "get [the car] running." On
October 14, 1998, the Appellants negotiated for and purchased the Firebird from Williams. Roberts
was an automobile dealer and a dealer in salvage automobiles. Both Williams and Deaton warned
Roberts not to purchase the automobile because it had been submerged in water and had a salvage
title. The purchase price was $9,000, with $6,300 down and $2,700 to be paid within a few days. 
Steven signed a document referred to as a buyer's guide containing an "as is" disclaimer. This
document clearly stated that the vehicle had been subjected to water damage and carried a salvage
title. Handwritten on the bottom of the buyer's guide was the notation, "To pay for inspection in
Tyler" and beside that "$300."

 After Steven received the actual certificate of title for the vehicle, he took the vehicle to
Dallas to be inspected and was denied a title. Roberts testified the car cannot have a title issued in
any state in the United States. Roberts and Steven initiated the current lawsuit. After the court
entered judgment that the plaintiffs take nothing, the trial court filed Findings of Fact and
Conclusions of Law at the request of the Appellants. 

 In a nonjury case, the trial court's findings of fact have the same force and dignity as a jury
verdict and therefore challenged findings of fact are reviewed for the legal and factual sufficiency
of the evidence supporting them by the same standards as are applied to jury findings. Unchallenged
findings of fact are binding on an appellate court unless the contrary is established as a matter of law
or there is no evidence to support the finding. See Zieba v. Martin, 928 S.W.2d 782, 786 n.3 (Tex.
App.-Houston [14th Dist.] 1996, no writ). 

 In reviewing for legal sufficiency, we consider only the evidence and inferences supporting
the finding and disregard all evidence and inferences to the contrary. Minn. Mining & Mfg. Co. v.
Nishika Ltd., 953 S.W.2d 733, 738 (Tex. 1997). If more than a scintilla of probative evidence
supports the finding, the no-evidence challenge fails. Id. In reviewing for factual sufficiency, we
weigh all of the evidence in the record and overturn the finding only if it is so against the great
weight and preponderance of the evidence as to be clearly wrong and unjust. Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996). 

 The trial court's conclusions of law are reviewable only when attacked as a matter of law. See
Waggoner, 932 S.W.2d at 631. The standard of review for conclusions of law is whether they are
correct; they will be upheld on appeal if the judgment may be sustained on any legal theory
supported by the evidence and need not be reversed if the controlling findings of fact will support
a correct legal theory. Amerada Hess Corp. v. Wood Group Prod. Tech., 30 S.W.3d 5, 11 (Tex.
App.-Houston [14th Dist.] 2000, pet. denied). 

 Although stated as Conclusion of Law E, the court's finding that Williams did not make
misrepresentations to Roberts or Steven concerning the automobile in question is substantively a
finding of fact. We shall therefore review the finding for legal and factual sufficiency. 

 Appellants contend Williams violated Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon
Supp. 2002), in that he made a representation (1) that the automobile was of a particular standard,
quality, or grade when it was another; (2) that caused misunderstanding about the certification of the
automobile; and (3) that the agreement conferred or involved rights that it did not confer. They
alleged that at the time of the sale, Williams represented that the automobile in question had a
roadworthy title and that such representation was false because the vehicle's Florida certificate of
title would allow the car to be sold for salvage only, and it could never be titled as a roadworthy
vehicle.

 The court's uncontested findings of fact include that Steven knew that the subject automobile
had a salvage title before purchase, that as part of the transaction Steven received a buyers guide that
stated on its face that the automobile had a salvage title and was a water-damaged car, and that
Steven read and understood the buyers guide he signed in connection with the purchase of the
automobile. There is evidence in the record to support each of these findings of fact. Insofar as the
Appellants allege Williams represented that the automobile had a roadworthy title at the time of sale,
we are bound by the court's finding of fact that at the time of the sale, Steven was aware the
automobile had a salvage title. Roberts testified he knew the automobile had a salvage title. He
testified he understood that to mean "you buy the car; you fix it; you get it inspected by the State and
get a reconditioned title for it. . . . That's the way it works most of the time." Therefore, both
Roberts and Steven understood at the time of the transaction that the automobile did not have a
rebuilt title. 

 Although the title of the automobile in question was not entered into evidence, there is
evidence in the record to suggest the title was a salvage title from Florida, or a nonrebuildable title
from Florida. In Texas the difference between a salvage vehicle and a nonrepairable vehicle is a
matter of degree regarding the estimated cost of repairs in comparison to the cash value of the
vehicle in its predamaged condition. See Tex. Transp. Code Ann. § 501.0911(a)(6), (8) (Vernon
1999). Both salvage and nonrepairable vehicles may be issued a regular certificate of title bearing
on its face "rebuilt salvage" if certain conditions are met. Tex. Transp. Code Ann. §§ 501.0922,
501.0923, 501.0927 (Vernon 1999). Appellants do not complain of any variance between the use
of the terms "salvage," "nonrebuildable," or "nonrepairable." In fact, Appellants' counsel used the
terms interchangeably. 

 There are two other interpretations of Appellants' allegations, and arguments made by counsel
at trial and on appeal rely on these interpretations. First, that Williams represented at the time of the
transaction the automobile was in sufficient condition at the time of the sale to receive a rebuilt
salvage title on inspection. Second, that Williams represented at the time of the transaction there
was a legal possibility of obtaining a rebuilt salvage title for the automobile if it were found, on
inspection, to be in sufficient condition. 

 Appellants point out that an implied representation may constitute a laundry-list violation
under the DTPA. See Henderson v. Cent. Power & Light Co., 977 S.W.2d 439, 445 (Tex.
App.-Corpus Christi 1998, pet. denied) (seal and warning label on meter enclosure was implied
representation that CPL owned and would maintain everything within enclosure). They argue
Williams made an implied representation, by selling a used car, that it was either in sufficient
condition to be given a rebuilt title or that it was a legal possibility to obtain a rebuilt title if the
vehicle were found, on inspection, to be in sufficient condition. Appellants cite Lone Star Ford, Inc.
v. McGlashan, which held that a dealer representing that he or she can sell used cars necessarily
represents that he or she can transfer legal title to the new owner to consummate a valid sale. Lone
Star Ford, Inc. v. McGlashan, 681 S.W.2d 720, 724 (Tex. App.-Houston [1st Dist.] 1984, no writ)
(when seller did not transfer title, failing to inform buyer that vehicle had a salvage title was not
excused by seller's lack of knowledge because representing that legal title can and will be transferred
is an affirmative representation, not a failure to disclose). The Texas Transportation Code provides
for limited circumstances in which the owner of a salvage or nonrepairable motor vehicle certificate
of title may sell the vehicle. Tex. Transp. Code Ann. § 501.0919 (Vernon 1999). Appellants do
not contend that Williams did not have legal title of the vehicle, that he was unable to transfer legal
title in this case, or that he failed to transfer legal title in this case. Appellants cite no law
recognizing an implied representation regarding the type of title for which an automobile may be
eligible in these circumstances. We do not recognize such an implied representation.

 Appellants focus on a notation on the buyer's guide stating, "To pay for inspection in Tyler"
and beside that "$300." Steven testified Williams had offered to take the vehicle to Tyler and have
it inspected to be retitled for $300. Roberts testified that after he picked up the car from Williams's
car lot, he was supposed to take it back in a few days so Williams could take it "on their roll-back
with one of their own cars to Tyler to have it inspected." He testified the purpose of taking the car
to have it inspected was to make sure the car was roadworthy so the state would issue another title
on the car. He did not have Williams take the car to Tyler, but later took it to Dallas to have it
inspected. Steven also testified that Williams offered to take the vehicle to Tyler to have it inspected
and retitled and that the fee he quoted for that service was $300. 

 Williams testified the notation meant that the car would have to be taken to Tyler and
inspected, if it was inspected in Texas, and that it would cost $300. He agreed the reason for getting
the car inspected would be to get a title issued, but he did not know they intended to take it to Tyler
for that inspection. He told them how much it would cost ($300) and that they would need to have
a copy of the parts they put on the car when they went for the inspection. Williams testified he had
not told Appellants he would take the car to Tyler and have it inspected for $300.

 It is in the province of the trial court, when serving as fact-finder, to judge the credibility of
the witnesses and to believe or disbelieve their testimony. The trial court could have chosen to
believe Williams's testimony that he had not offered to take the vehicle for inspection and to have
it retitled for $300. Even if the trial court had believed Williams had for $300 extended an offer, the
court could have found the offer made was to transport the vehicle for the purpose of inspection, not
an offer to have the vehicle retitled. 

 The trial court could have found, based on the evidence Appellants knew the vehicle was a
salvage vehicle with water damage, that Steven had entered into an "as is" agreement regarding the
condition of the vehicle and that Appellants had taken the vehicle off Williams's lot to effect some
repairs before returning it to Williams for him to take to Tyler to have it inspected, which they
decided not to do, and that any offer made by Williams to transport the vehicle for inspection was
not a representation that the vehicle at the time of purchase was in sufficient condition to obtain a
rebuilt salvage title.

 Additionally, a vehicle may be inspected for the purpose of obtaining a salvage certificate
of title or an in-state title for an out-of-state vehicle, as well as for a rebuilt salvage title, so the offer
to transport the vehicle for inspection does not necessarily imply the type of title intended to be
sought. Therefore, in light of Williams's testimony that he did not know for what use Steven
purchased the vehicle, there is evidence to support the trial court's finding that any offer made by
Williams to transport the vehicle for inspection was not a representation that it was a legal possibility
to obtain a rebuilt salvage title for the vehicle. 

 However, in light of the evidence that the vehicle already had a salvage title and that
Williams told Appellants they would need to take to the inspection a copy of all the parts they put
on the car, a requirement only for application for a rebuilt salvage title, the court may have found an
implicit representation that it would be a legal possibility to obtain a rebuilt title for the vehicle if
it passed inspection. See Tex. Transp. Code Ann. § 501.0922. 

 Even assuming Williams's offer to transport the vehicle for inspection amounted to a
statement of fact representing that it was a legal possibility to obtain a rebuilt title for the vehicle if
it passed inspection, Appellants had the burden to prove that such representation was false or
misleading. Appellants do not point us to any statute or regulation prohibiting the issuance of a
rebuilt salvage title for a water-damaged car with a nonrebuildable Florida title. The Texas
Transportation Code provides for the issuance of certificates of title to certain vehicles brought into
the state. 

 On proper application by the owner of a vehicle brought into this state from another
state or jurisdiction that has on any certificate of title issued by the other state or
jurisdiction a "rebuilt," "salvage," "nonrepairable," or analogous notation, the
department shall issue the applicant a certificate of title or other appropriate
document for the vehicle.


Tex. Transp. Code Ann. § 501.0924 (Vernon 1999). The certificate of title issued must show
certain information on its face, including any notation the department considers necessary or
appropriate. Id. Once such a Texas certificate is issued, the provisions mentioned above regarding
salvage, rebuilt, or nonrepairable vehicles would apply. The Appellants have cited us to no law or
regulation, and we have found none, prohibiting the issuance of a rebuilt salvage title for a water-damaged car with a nonrebuildable Florida title. 

 Roberts testified the vehicle was taken to Dallas to be inspected and a title was not issued on
the vehicle. He said that "[t]his car cannot have a title issued in any state in the United States." He
further testified he had not found any state in the United States that would issue a title on the vehicle. 
He testified he called Florida about the title several times. Steven testified the car could not be
registered. Williams testified that he had never tried to obtain title to the car and that he did not
know whether the vehicle could be titled in Texas. He suggested Florida law may have changed
between the time of the sale and the inspection. Neither party requested the trial court take judicial
notice of any Florida law and did not furnish the court with sufficient information to enable it
properly to comply with the request as required by Tex. R. Evid. 202. However, there is nothing in
the record indicating that the reason the vehicle was denied a rebuilt salvage title was because it had
a nonrebuildable title from Florida due to water damage. The vehicle may have been denied a rebuilt
title based on a finding by the inspector that the car was not in roadworthy condition. Therefore, the
trial court's finding that Williams made no misrepresentations was not against the great weight and
preponderance of the evidence. Appellants' first point of error is overruled. 

 Although Appellants challenge other Findings of Fact and Conclusions of Law entered by
the trial court, the finding that there was no misrepresentation supports the trial court's judgment and
disposes of Appellants' claims because those claims were founded on the basis of such
misrepresentation. 

 The judgment of the trial court is affirmed. 



 Ben Z. Grant

 Justice


Date Submitted: April 4, 2002

Date Decided: April 30, 2002


Do Not Publish