**Mur Lee GRANT, Appellant,**

v.

**SOUTHWESTERN ELECTRIC POWER COMPANY,**
**Appellee.**

**No. 06–98–00159–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted July 1, 1999.

Decided March 30, 2000.

Rehearing Overruled May 9, 2000.

Joseph L. Rosenfield, Dallas, for Mur Lee Grant.

Stayton L. Worthington, Brown McCarroll & Oaks Hartline, Longview, for SWEPCO.

Jacalyn A. Hollabaugh, Baker & Botts, LLP, Houston, for Reliant Energy Inc. (Third Party).

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice GRANT.

This is an appeal from a summary judgment granted in favor of Southwestern Electric Power Company (SWEPCO) in a negligence suit brought by Mur Lee Grant (hereafter referred to as "Grant") for personal injuries and property damage. The overriding issue in this case is the scope and interpretation of a public utility tariff filed by SWEPCO with the Public Utility Commission (PUC).

In three points of error, Grant contends (1) the trial court erred in granting a summary judgment in favor of SWEPCO based upon the law, (2) the trial court erred in finding no evidence of a duty owed by SWEPCO to her, and (3) the trial court erred in failing to allow Grant to proceed to trial based upon a genuine issue of material fact and allegations of gross negligence

There was summary judgment proof that on or about June 10, 1995, Grant experienced electrical problems at her home. She noticed that her lights were going from bright to dim. Grant's husband, Harolie, testified during his deposition that a thunderstorm came and "the house just lit up and all the lights outside—the yard lights lit up." He turned off the breakers to their house, but he testified that the lights were "still lit up all over the house, the outside, too, with the breakers off." Grant began to smell smoke and noticed that smoke was coming from a VCR and a television. She noticed that they were not working properly, so she unplugged them. She also noticed that other electrical appliances, such as a microwave, were also not working properly.

She called SWEPCO, which sent a troubleman to her residence around 11:00 p.m. The troubleman, Henri Killgore, checked the voltage of the electricity coming into the home from the meter outside the house, using standard procedures. The voltage checked out O.K., and Killgore told Grant to contact an electrician. The electrician arrived at Grant's house later that evening. Bill Turner, the electrician, testified in his deposition that Grant told him the SWEPCO troubleman had said that the problem was not caused by any electrical problem outside of her home and that it must have been caused by an electrical problem inside her home. Turner checked the electrical box inside her home and determined that the voltage readings were not consistent. He explained that the inconsistent voltage readings were causing her lights to go from bright to dim.

Upon Turner's advice, Grant called SWEPCO again, and Killgore returned to the Grant house at approximately 12:30 a.m. Turner waited for Killgore and told Killgore what he had done. The first thing Killgore did was to pull the meter (as he had done on his first visit) and check the flow of electricity to the Grant home. Killgore found a floating or irregular voltage problem. Killgore checked the power lines and discovered that a tree limb had fallen on a secondary neutral line, damag-

ing it. Killgore proceeded to repair the fallen line and completed all of the necessary repairs within four hours of his initial visit to the Grant home. In his deposition testimony, Grant's husband testified that they experienced no further problems that evening.

The following Monday, Grant took a list of her damaged appliances to a SWEPCO representative and told her what had happened. Jackie Gassoway, who worked in customer service, told Grant that an adjuster would come to her house later that afternoon. According to Grant's deposition testimony, she got a call from SWEPCO around 5:00 p.m., explaining that they would not be coming to get the damaged appliances and that she needed to take them to get them repaired. She told the SWEPCO representative she did not want to touch them because she was afraid of them.

After the phone call, she disconnected the appliances that were not already disconnected. She put a microwave, a small television, and a toaster on the kitchen table. According to her deposition testimony, as she was walking by the kitchen table, she smelled something burning. She turned around, and when she did, she saw a streak of light. The streak of light hit her in the face and went up her nose, knocking her against the door facing a nearby clothes dryer. She did not know if the streak of light came either from the appliances, a nearby plug, or a nearby light switch. According to her affidavit, the surge of electricity came from one of the appliances she was attempting to disconnect or from an electrical outlet. However, Harolie Grant testified that his wife said a surge "came out of that TV and

went up her nostrils." In her affidavit, Grant contends she suffered a severe electrical shock, causing her injuries and further damage to her property. In her first amended petition, Grant alleges she suffered physical pain, mental anguish, $7,400 in medical expenses, loss of earnings, and damages to her property.

■ Grant contends the trial court erred in granting summary judgment in favor of SWEPCO. SWEPCO moved for summary judgment on two theories: (1) that there was no evidence of negligence,[1] gross negligence, or willful misconduct, and (2) that SWEPCO was not liable under its tariff on file with the PUC, regardless of any alleged negligence, for voltage fluctuations due to an accident, a breakdown of power lines, or an act of God. SWEPCO's motion contained both a no-evidence summary judgment motion under Rule 166a(i) and an ordinary summary judgment motion, under Rules 166a(b) & (c).[2] The rules do not prohibit such a hybrid motion, but the better practice is either to file two separate motions, one containing the no evidence summary judgment and one containing the ordinary summary judgment, or to file one document containing both motions but with the arguments and authorities for each clearly delineated and separate from one another.

*Public Utility Tariff*

■ Grant's first two points of error are predicated on the construction of a tariff filed by SWEPCO with the PUC. SWEPCO is an electric utility in the State of Texas as that term is defined in the

1. SWEPCO's motion met the requirements of a no-evidence summary judgment motion by stating the element on which there was no evidence. The comment to Rule 166a(i) states that the rule does not authorize conclusory motions or general no-evidence challenges to an opponent's case. Although SWEPCO's motion argued there was no evidence of negligence, the context of the motion shows there was no evidence it owed Grant a duty. SWEPCO was not arguing there was no evidence of a cause of action for negligence, i.e., duty, breach, proximate cause, and damages. Such a general contention would fail to meet the requirement that the motion must state the specific element(s) for which there was no evidence.

2. Tex.R. Civ. P. 166a(b), (c) & (i).

Texas Utility Code § 31.002(1).[3] Under the Public Utilities Regulatory Act (PURA), the Legislature has conferred jurisdiction upon the PUC to regulate utility rates, operations, and services.[4] The PURA is an executive agency, with the power to create rules as necessary to carry out its legislative mandate.[5] The PURA requires each utility to file a tariff with the PUC.[6] A tariff is a document which lists a public utility's services and the rates for those services.[7] Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law.[8] Tariffs, thus, amount to a binding contract between the utility and its customers.[9] Because a tariff is presumed reasonable, the burden to prove unreasonableness is on the customer.[10]

■ As a binding contract, a tariff can establish contractual duties of the parties. If these duties are breached, a contract action would be the appropriate remedy. But a tariff can also limit a public utility's liability. The provisions of the tariff applicable in this case include

### 1. APPLICABLE TO ALL CLASSES OF ELECTRIC SERVICE

In order that all Customers may receive uniform, efficient, and adequate service, electric service will be supplied to and accepted by all Customers receiving service from the Company in accordance with these Terms and Conditions.

. . . .

### 8. CUSTOMER'S INSTALLATION

**Customer is responsible for installing and maintaining such protective devices as are recommended or required by the then current edition of the National Electrical Code or as may be necessary to protect Customer's equipment or process during abnormal service conditions or the failure of all or a part of the electric service provided by the Company.** All wiring and other electrical equipment furnished by the Customer will be installed, operated, and maintained by the Customer at all times in conformity with good electrical practice and with the requirements of the constituted authorities and these Terms and Conditions.

. . . .

### 13. CONTINUOUS SERVICE

Company will make reasonable provisions to insure satisfactory and continuous service, but **does not guarantee a continuous supply of electric energy or that the voltage, wave form or frequency of the supply will not fluctuate.** The Company **shall not be liable for damages occasioned by interruption, failure to commence delivery, or voltage, wave form or frequency fluctuation caused by interruption or failure of service or delay in commencing service due to accident to or breakdown of plant, lines, or equipment, strike, riot, act of God,** order of any court or judge granted in any bonafide adverse legal proceedings or action or any order of any commission or tribunal

---

**3.** Tex. Util.Code Ann. § 31.002(1) (Vernon Supp.2000).

**4.** *See* Tex. Util.Code Ann. § 14.001 (Vernon 1998).

**5.** *Id.*

**6.** Tex. Util.Code Ann. § 32.101 (Vernon 1998).

**7.** *Henderson v. Central Power & Light Co.,* 977 S.W.2d 439, 446 (Tex.App.-Corpus Christi 1998, pet. denied).

**8.** *Central Power & Light Co.,* 977 S.W.2d at 446–47.

**9.** *Central Power & Light Co.,* 977 S.W.2d at 447; *see also Vollmer,* 805 S.W.2d at 830 (tariff also represents the utility's "contract with the State").

**10.** *Vollmer,* 805 S.W.2d at 829.

having jurisdiction; or, **without limitation by the preceding enumeration, any other act or things due to causes beyond its control, to the negligence of the Company, its employees, or contractors, except to the extent that the damages are occasioned by the gross negligence or willful misconduct of the Company.**

(Emphasis added.)

*Reasonableness of Tariffs*

The leading Texas case on the reasonableness of public utility tariffs is *Houston Lighting & Power Co. v. Auchan.*[11] In *Auchan,* a grocery store sued its electric company for spoiled food and the cost of removal after an extended power outage. The applicable portions of the tariffs in *Auchan* and in the present case are almost identical. The Texas Supreme Court stated, "We conclude that tariffs such as the one at issue here are not unreasonable when they limit *economic damages* resulting from the utility's negligence."[12] The Supreme Court in *Auchan* did not address either the duty an electric company owes the public or the issue of a tariff attempting to limit liability for personal injuries.

The term *economic damages* is a term of art with a specific legal meaning. The Texas Civil Practice and Remedies Code defines *economic damages* as "compensatory damages for pecuniary loss; the term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society."[13] Some of the damages sought by Grant are specifically included in the exceptions as to what is not considered economic damages. The case before this Court is a matter of first impression.

*Public Policy Considerations*

An analysis of the public policies enunciated in *Auchan* for upholding a tariff, including a liability limitation for economic damages, does not apply in the case of personal injuries. First, the court stated that

> The only electric utility customers who would suffer substantial economic damages [in the case of a power outage or disruption] would be commercial and industrial users. Losses paid to those commercial or industrial customers could be passed on to smaller customers, including residential users, in the form of higher rates. This consideration tends to support the conclusion that tariffs that limit economic damages are not unreasonable, even when the damages suffered are substantial.[14]

The court's analysis is based on public policy considerations of economic damages, not personal injury damages. *Auchan* does not reflect any concern by the court that a utility's liability for personal injuries could result in substantial losses of the type that could be contemplated in the case of industrial or commercial damage.

Second, the court discussed the fact that the burden of estimating potential economic losses and protecting against them is best placed on the customer, who either insures or protects against those losses, rather than the utility company, which cannot accurately assess each customer's potential losses or damages and guard against them.[15] In many situations, it would be difficult if not impossible for an individual to reasonably anticipate or prepare for a physical injury caused by an interruption or fluctuation in their electrical service. In those instances, the utility company would be in a better position to assess the risks to all of its customers and take appropriate measures to safeguard

---

**11.** 995 S.W.2d 668 (Tex.1999).

**12.** *Id.* at 675 (Emphasis added.).

**13.** TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(4) (Vernon 1997).

**14.** 995 S.W.2d at 673.

**15.** *Id.* at 673–74.

them or to insure itself. The public policies enunciated by the *Auchan* court do not apply in the present case. In fact, those same policy considerations do not support upholding a limitation on personal injuries.

*Legality of the Limitation*

 The tariff in question is a contract that attempts to limit SWEPCO's liability in certain circumstances, excepting gross negligence and willful misconduct. But as a contract, the provisions therein are subject to the laws of Texas and to public policy considerations.[16] By enforcing such a rule, the courts are not seeking to protect or punish either party to the contract, but to benefit and protect the public.[17] In general, parties may contract to release future liability unless the agreement is unconstitutional, violates statutory law, or is against public policy.[18] Expressions of public policy are found in a state's constitution and statutes, as well as the common law.[19]

 While Texas has not dealt with the issue of a tariff attempting to limit

liability for personal injury damages, other jurisdictions have.[20] Section 2 of the Uniform Commercial Code as enacted into law by the Texas Legislature covers the sale of goods.[21] SWEPCO is engaged in the business of selling electricity. The Texas Supreme Court has ruled that electricity: "Electricity is a commodity, which, like other goods, can be manufactured, transported and sold."[22] As the Houston Court of Appeals stated, "While the distribution of the electricity through a system of towers, poles, and wires may well be considered a service, the electricity itself is a consumable product."[23] As such, the sale of electricity comes under the umbrella of the Uniform Commercial Code.

Subchapter G of Section 2 of the Uniform Commercial Code concerns remedies available for causes of action based on the sale of goods.[24] The Uniform Commercial Code recognizes that some limitations on liability are allowed under the law: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."[25] But the Code also

---

16. "A contract to do a thing which cannot be performed without violation of the law" violates public policy and is void. *See Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947).

17. *Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex.App.-Fort Worth 1992, writ denied).

18. *Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248, 253 (Tex.App.-Austin 1993), *modified on other grounds, aff'd*, 903 S.W.2d 347 (Tex.1995).

19. *Locomotive Eng'rs & Conductors Mut. Protective Ass'n v. Bush*, 576 S.W.2d 887, 890 (Tex.Civ.App.-Tyler 1979, no writ).

20. The Montana Supreme Court in *State ex rel. Mountain States Tel. & Tel. Co. v. District Court of the Second Judicial District* was faced with a cause of action for economic damages where a public utility tariff had been filed. After upholding the tariff's limitation on liability for economic damages, the court addressed the concern that such a limitation provision in the tariff could be applied to personal injuries. The Montana Supreme Court relied on that state's enactment of the Uniform Commercial Code in limiting the lia-

bility limitation provision to economic damages. 160 Mont. 443, 503 P.2d 526, 530–31 (1972). *But see Los Angeles Cellular Tel. Co. v. Superior Court*, 65 Cal.App.4th 1013, 76 Cal.Rptr.2d 894 (1998) (holding tariff limited telephone company's liability for ordinary negligence resulting in personal injuries); *Landrum v. Florida Power & Light Co.*, 505 So.2d 552 (Fla.Dist.Ct.App.1987) (holding that an electric company's tariff limited its liability for all damages resulting from ordinary negligence).

21. Tex. Bus. & Com.Code Ann. § 2.102 (Vernon 1994).

22. *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex.1988).

23. *Houston Lighting & Power Co. v. Reynolds*, 712 S.W.2d 761, 766 (Tex.App.-Houston [1st Dist.] 1986), *rev'd on other grounds*, 765 S.W.2d 784 (Tex.1988).

24. Tex. Bus. & Com.Code Ann. § 2.701, et seq. (Vernon 1994 & Supp.2000).

25. Tex. Bus. & Com.Code Ann. § 2.719(c) (Vernon 1994).

recognized the fundamental difference between economic damages and personal injury damages: "Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."[26] The Supreme Court also recognized this difference in *Auchan*, by limiting its ruling to only economic damages and not holding that there was a blanket limitation on liability for all damages.

■ In analyzing the tariff's attempted limitation of liability for personal injuries, we find that allowing a public utility through a tariff to limit personal injury damages is against public policy. The law of Texas, as adopted from the Uniform Commercial Code, is that in relation to the sale of a consumer good (in the present case, electricity) a limitation on damages for personal injuries is prima facie unconscionable. A prima facie case of unconscionability having been made, it is now the burden of the public utility company to rebut this with evidence of its own.

*Motions for Summary Judgment*

Although SWEPCO combines in its Motion for Summary Judgment its arguments and analyses that apply to the regular motion for summary judgment and to the no-evidence motion for summary judgment, we will make a clear distinction between the two for clarity of analysis. In its motion, SWEPCO uses its tariff as both a shield and a sword. SWEPCO alleges that the tariff protects it from all liability due to ordinary negligence, but also that the same tariff provision, by giving it a blanket limitation on liability, proves that it owed no duty to Grant. The basis for the no-evidence summary judgment was that Grant had no evidence that SWEPCO owed her any duty. The basis for the regular summary judgment was that the

tariff limited SWEPCO's liability due to ordinary negligence as a matter of law.

*Property Damages Due to Ordinary Negligence*

■ One element of Grant's claim is for property damages. As previously discussed, a tariff's liability limitation for economic damages is reasonable.[27] Therefore, a summary judgment was proper on any property claims made by Grant based on ordinary negligence by SWEPCO.

*Personal Injuries Due to Ordinary Negligence—No-Evidence Summary Judgment*

Texas Rule of Civil Procedure 166a(i) provides that

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.[28]

■ Where a motion is presented under Rule 166a(i) asserting there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense under subparagraphs (a) or (b) of Rule 166a. Rather, although the nonmoving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on the challenged elements.[29] A no-evidence summary judgment is essentially a pretrial directed verdict; therefore, we apply the same legal sufficiency standard in review-

26. *Id.*

27. *See Auchan*, 995 S.W.2d at 673–74.

28. Tex.R. Civ. P. 166a(i).

29. *See* Tex.R. Civ. P. 166a, Notes and Comments.

ing a no-evidence summary judgment as we apply in reviewing a directed verdict.[30] We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented.[31] We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences.[32] A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact.[33] More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."[34]

Grant contends she presented the trial court with summary judgment proof from which the court could have determined that SWEPCO owed her a duty. She presented summary judgment proof: (1) on the reasonableness of the tariff by proof that her damages were large compared to her inability to collect damages under the tariff, (2) on whether SWEPCO could have solved the problem if its technician had discovered the problem with its electrical lines and shut off the electrical current to Grant's house, (3) on whether SWEPCO acted negligently in failing to discover the problem on its initial visit, and (4) on whether SWEPCO failed to take appropriate action in accordance with their agreement to remove and repair the damaged appliances.

Negligence requires proof of four elements: (1) the existence of a duty; (2) the breach of that duty; (3) that the breach was a proximate cause of damages; and (4) that the plaintiff was damaged.[35] Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort.[36] Moreover, the existence of a duty is ultimately a question of law for the court to decide from the facts surrounding the occurrence in question.[37] A plaintiff's petition must contain sufficient allegations of facts to show the existence of a legal duty owed by the defendant to the plaintiff,[38] but the plaintiff is not required to make specific allegations of a duty, if a duty can be inferred from allegations in the petition, including the relationship of the parties and other pertinent facts.[39]

Generally, a public utility has a duty to exercise proper precautions to anticipate and prevent injuries.[40] The degree of care that a public utility must exercise is ordinary or reasonable.[41] The

30. *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.).

31. *Id.*

32. *Merrell Dow Pharmaceuticals v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

33. *Fiesta Mart, Inc.,* 979 S.W.2d at 70–71.

34. *Havner,* 953 S.W.2d at 711.

35. *Judwin Properties, Inc. v. Griggs & Harrison, P.C.,* 981 S.W.2d 868, 869 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (per curiam) (citing *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex.1989)).

36. *Abalos v. Oil Dev. Co.,* 544 S.W.2d 627, 631 (Tex.1976).

37. *Sosa v. Williams,* 936 S.W.2d 708, 710 (Tex.App.-Waco 1996, writ denied) (citing *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990)).

38. *Independent Eastern Torpedo Co. v. Carter,* 131 S.W.2d 125 (Tex.Civ.App.-Eastland 1939, no writ).

39. *Montgomery Ward & Co. v. Scharrenbeck,* 199 S.W.2d 830 (Tex.Civ.App.-Eastland), *aff'd,* 146 Tex. 153, 204 S.W.2d 508 (Tex.1947).

40. *Texas Traction Co. v. George,* 149 S.W. 438 (Tex.Civ.App.-Dallas 1912, writ ref'd).

41. *West Texas Util. Co. v. Renner,* 32 S.W.2d 264 (Tex.Civ.App.-Eastland 1930), *modified on other grounds,* 53 S.W.2d 451 (Tex. Comm'n App.1932, holding approved); *Jacksonville Ice & Elec. Co. v. Moses,* 63 Tex.Civ. App. 496, 134 S.W. 379 (1911, writ refused).

degree of care that must be used takes into consideration the danger to be avoided.[42] This standard of care is elastic, in order to meet all emergencies.[43] The degree of care must be commensurate with the danger.[44] Texas courts will also examine the language of the tariff to determine if a duty exists.[45]

As summary judgment proof, both sides presented affidavits that Grant was a customer of SWEPCO and had contacted it about problems with her electrical service. Both sides also presented evidence that a troubleman from SWEPCO twice responded to Grant's house because of these calls. The affidavit of the troubleman from SWEPCO states that Grant advised him that lights had been fluctuating. In Grant's affidavit filed in support of her response to SWEPCO's Motion for Summary Judgment, she states that after the downed electric line was fixed, a service person from SWEPCO came back to her house and tried to turn on a television and a video cassette recorder, but neither would work.

 Once SWEPCO had filed a Motion for a Summary Judgment contending that Grant had not shown that SWEPCO owed any duty to her, the burden was then on Grant to produce more than a scintilla of evidence that it did. Utility companies owe a duty of ordinary care to anticipate and prevent personal injuries caused by their providing services. Whether or not SWEPCO met this duty is a question of fact for a jury to decide.

SWEPCO points to two San Antonio Court of Appeals cases to show that an electric company does not have a duty to inspect wiring or fixtures inside a customer's property.[46] First, Grant did not allege that SWEPCO had any duty to inspect. In fact, her allegations go to a much broader duty of reasonable care. Grant alleged that SWEPCO should have turned off her electricity once it became aware that there was damage to her property. Second, SWEPCO's troubleman did, in fact, inspect some of her appliances after he had fixed the problem with the power line. Whether or not SWEPCO assumed the duty to inspect by the troubleman's actions is a question of law for the trial court to decide. SWEPCO may not have owed a duty to Grant to inspect her property, but it did have other duties that it owed to her under an ordinary standard of care, as discussed previously.

We hold that Grant presented more than a scintilla of evidence that SWEPCO owed her a duty as to her noneconomic damages claims. A no-evidence summary judgment on Grant's personal injury claims due to ordinary negligence was inappropriate.

*Personal Injuries Due to Ordinary Negligence—Regular Summary Judgment*

 SWEPCO contended in its motion that it was entitled to summary judgment because the tariff limited all liability on its part as a matter of law. Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[47] The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the

42. *Robert R. Walker, Inc. v. Burgdorf,* 150 Tex. 603, 244 S.W.2d 506 (1951).

43. *Wendell v. Central Power & Light Co.,* 677 S.W.2d 610, 620 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.) (citing *West Texas Util.,* 53 S.W.2d at 453–54).

44. *Id.*(citing *West Texas Util.,* 53 S.W.2d at 453–54).

45. *Central Power & Light Co. v. Romero,* 948 S.W.2d 764, 766–67 (Tex.App.-San Antonio 1996, writ denied); *see also Texaco, Inc. v. Central Power & Light Co.,* 955 S.W.2d 373, 377–78 (Tex.App.-San Antonio 1997, pet. denied).

46. *Texaco, Inc.,* 955 S.W.2d at 377–78; *Romero,* 948 S.W.2d at 767.

47. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex.1979).

summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law.[48] Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant.[49]

SWEPCO relies on the tariff to establish that it was entitled to summary judgment as a matter of law on all of Grant's claims, because the tariff precludes all liability for problems caused by forces beyond its control, such as acts of nature, even when its own negligence occasions damages, except when the damages are occasioned by gross negligence or willful misconduct on its part. We do not agree with SWEPCO's contention.

Our analysis of the tariff in light of the Uniform Commercial Code is that an attempted limitation on personal injury damages is prima facie unconscionable. The burden is on SWEPCO to rebut this presumption, which SWEPCO did not. Therefore, summary judgment in favor of SWEPCO was error. The summary judgment in favor of SWEPCO on Grant's personal injury claims due to ordinary negligence is reversed.

*Summary Judgment—Personal Injury and Property Damage Due to Gross Negligence*

Under the provisions of the tariff, SWEPCO cannot be liable for damage caused by a power fluctuation unless the plaintiff proves that the damages were occasioned by gross negligence or willful misconduct on the part of SWEPCO. Grant contends the trial court erred in failing to allow Grant to proceed to trial based on a genuine issue of material fact and allegations of gross negligence by Grant. The tariff does not preclude SWEPCO's liability for damages as a result of gross negligence or willful misconduct of the company, no matter the underlying cause of the initial problem. This applies to property damages, as well as to other types of damages.

Gross negligence is defined as more than momentary thoughtlessness, inadvertence, or error of judgment.[50] It is such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.[51] A party's gross negligence can be proven by a showing that the party had actual subjective knowledge that his conduct created an extreme degree of risk.[52]

Grant contends that the summary judgment proof raises a fact issue on whether SWEPCO was grossly negligent (1) when its troubleman failed to detect the electrical problem on his first visit to her house, (2) when its troubleman failed to check her appliances after she smelled smoke and saw smoke coming from her appliances, and (3) when its customer service representative failed to have the appliances removed from her home and repaired.

SWEPCO contends Grant did not plead gross negligence and therefore the trial court could not have addressed this issue. The only language in Grant's first amended petition that comes close to an allegation of gross negligence is in paragraph three where Grant alleges that SWEPCO was negligent in "its total disregard for the safety of Plaintiff's person or property." After a thorough review of Grant's first amended petition, in no place did she use the words "gross negligence,"

**48.** *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990).

**49.** *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985).

**50.** Tex. Civ. Prac. & Rem.Code Ann. § 41.001(7) (Vernon 1997).

**51.** *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1984).

**52.** *Lawrence v. TD Indus.,* 730 S.W.2d 843 (Tex.App.-Dallas 1987, writ ref'd. n.r.e.).

did she allege SWEPCO acted with malice, or did she allege SWEPCO had an actual awareness of an extreme degree of risk created by its conduct.

Courts have continuously held that a petition shall be construed liberally in favor of the pleader.[53] Additionally, the Texas Rules of Civil Procedure state that all pleadings shall be construed so as to do substantial justice.[54] The rules of pleading in this state do not require any particular form. The petition shall contain a short statement of the cause of action sufficient to give fair notice of the claim involved.[55] The policy behind these rules is that the defending party must be given fair notice of the theory and facts for which it is being sued.

■ Even construing the pleadings liberally toward Grant, we hold that she does not plead a cause of action for gross negligence. The trial court could not have granted summary judgment on this issue, because the issue of gross negligence was never before it.

*Conclusion*

Grant's petition included one cause of action—negligence—with two types of damages—economic and personal injury. The construction of the tariff and the application of *Auchan* are both vital to this case. The Texas Supreme Court ruling in *Auchan* applies only to economic damages occasioned by negligence. Grant's property damages claims based on ordinary negligence are subject to the tariff's limitation of liability, and summary judgment was appropriate.

SWEPCO filed motions for summary judgment based on both a regular summary judgment standard and a no-evidence summary judgment standard. The liability limitation in the tariff as to personal injuries is prima facie unconscionable. Accordingly, the regular summary

judgment against Grant's personal injury claims based on ordinary negligence was error. As for the no-evidence summary judgment motion, Grant presented the trial court with more than a scintilla of evidence that SWEPCO owed her a duty; therefore, a no-evidence summary judgment on this issue was error. The trial court's summary judgment against Grant's personal injury cause of action is reversed and remanded for trial on the merits.

Grant never pleaded gross negligence to the trial court; therefore, gross negligence was not brought in this cause of action.

The summary judgment based on property damages due to ordinary negligence is affirmed. The summary judgment on personal injury is reversed and remanded for trial.

**53.** *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex. 1982).

**54.** *See* Tex.R. Civ. P. 45.

**55.** *See* Tex.R. Civ. P. 79.