TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00213-CV







Cox Texas Newspapers, L.P. d/b/a Austin American-Statesman
, Appellant


v.


Edward Wootten
, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. 99-07920, HONORABLE PAUL DAVIS, JUDGE PRESIDING 





 Edward Wootten brought suit against Cox Texas Newspapers, L.P., doing business
as the Austin American-Statesman (the Statesman) for damages arising out of an article published
by the Statesman that allegedly included photographs of his dead wife. The Statesman moved for
summary judgment, in part on free-speech grounds, and the trial court denied the motion. The
Statesman now brings this interlocutory appeal from the denial of its motion for summary
judgment. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6) (West Supp. 2001). We affirm
in part and reverse in part.


FACTUAL AND PROCEDURAL BACKGROUND

 Wootten's wife, Barbara, died in November of 1998. He engaged the services of
Robert Falcon, owner of All Faith's Funeral Service, to prepare his wife's body for burial and for
transfer from Austin to Arlington National Cemetery in Virginia for a military funeral. Wootten
instructed Falcon that his wife wished to be buried in her own white gown with a crucifix on her
chest and her hands folded over her prayer book. Wootten also told Falcon not to apply any
makeup to her face and not to open the casket for anyone, as his wife did not want her body to be
viewed. Falcon was to drape the closed casket in an American flag and have it flown to Virginia
for burial. Barbara Wootten's casket was shipped to Virginia two days after her death, and she
was subsequently buried at Arlington National Cemetery.

 On Sunday, March 14, 1999, the Statesman published an article entitled "Robert
Falcon and the Cheap Way Out." The article was sparked by one reporter's curiosity about the
practices and prices of the modern funeral business. That reporter approached Falcon in hopes
of learning how and why Falcon offers funeral services for a substantially lower price than his
competitors. Falcon agreed to allow the reporter and his photographer access to every aspect of
the funeral home. The article that ultimately appeared in the newspaper described the many
unique features of Falcon's funeral business and detailed the reporter's experience following
Falcon on death calls and watching him prepare bodies and conduct funerals over the course of
more than 200 hours during the fall and winter of 1998. The front-page article included a picture
of a casket draped with an American flag on an air-freight pallet. On another page of the article,
there was a small picture of an open casket with a woman lying inside dressed in a white gown
with a crucifix on her chest and her hands folded over a prayer book. Her face was not depicted.

 Wootten was reading his Sunday newspaper when he noticed the front-page article
about Falcon. As he read on, he discovered that the reporter and photographer had been following
Falcon during the time that his wife's body had been in Falcon's care. He then recognized his
wife as the person lying in the open casket. The article included this disclaimer: "Families who
did not wish themselves or their deceased to be named or pictured in this story aren't; others
volunteered to share their experiences. In a few cases, identifiable details were omitted." Wootten
had never been informed that an article was being published, was never asked for permission to
publish the image of his wife, and insists that he would have refused any such request. Wootten
felt the use of his deceased wife's photograph in an article entitled "The Cheap Way Out" sullied
the dignity and solemnity he had hoped to provide her and violated her wish not to be viewed after
her death.

 Wootten subsequently filed suit against the Statesman, Falcon, and the funeral
home. The Statesman moved for summary judgment claiming that Wootten could not succeed on
any of the causes of action that he pleaded, that Wootten actually pled nothing more than invasion
of privacy, and that the Statesman's actions were privileged under the First Amendment and article
1, section 8 of the Texas Constitution. See U.S. Const. amend. I; Tex. Const. art. 1, § 8. The
trial court denied the Statesman's motion without stating any grounds, and the Statesman now
appeals the interlocutory order of the trial court. Falcon and the funeral home are not parties to
this appeal.


DISCUSSION

 In general, the denial of a motion for summary judgment is an interlocutory order
not reviewable on appeal. Novak v. Stevens, 596 S.W.2d 848, 849 (Tex. 1980); Delta Air Lines,
Inc. v. Norris, 949 S.W.2d 422, 428 (Tex. App.--Waco 1997, writ denied). However, section
51.014(a)(6) of the Texas Civil Practice and Remedies Code gives members of the electronic and
print media, and those whose statements have been published in the media, the right to appeal
from a denial of a motion for summary judgment that is based in whole or in part on a free-speech
or free-press claim or defense. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6); see Delta Air
Lines, 949 S.W.2d at 428. Moreover, in the interest of judicial economy, we may consider on
appeal any claim raised in the media defendant's motion and denied by the trial court, so long as
the motion was based at least in part on free-speech grounds. Delta Air Lines, 949 S.W.2d at 429. 
Because the Statesman asserts in part that its actions are protected as conduct of a free press, the
trial court's denial of the Statesman's motion for summary judgment is reviewable in its entirety. 
We review the trial court's summary-judgment decision de novo. See Texas Dep't of Ins. v.
American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). 

 Summary judgment is proper if the movant establishes that there are no genuine
issues of material fact and that it is entitled to judgment as a matter of law. Wornick Co. v. Casas,
856 S.W.2d 732, 733 (Tex. 1993). A defendant who conclusively negates at least one of the
essential elements of each of the plaintiff's causes of action is therefore entitled to summary
judgment. Id. In reviewing a summary judgment, we must accept all evidence favorable to the
non-movant as true, indulging every reasonable inference and resolving all doubts in favor of the
non-movant. Id. 


I. Joint Tortfeasor Liability 

 A. Breach of Fiduciary Duty

 Wootten contends that Falcon had a fiduciary duty to preserve the dignity of his
wife's dead body, which was breached when he allowed the Statesman access to the corpse. 
Wootten claims that the Statesman knew that Falcon was breaching this duty, and that the
Statesman participated in the breach by failing to get Wootten's permission to take and publish
photographs of his wife. Wootten's first cause of action asserts that the Statesman should be held
liable as a joint tortfeasor because the Statesman knowingly participated in the alleged breach of
Falcon's fiduciary duty to Wootten. This claim arises from the rule set forth in Kinzbach Tool Co.
v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942). 

 The Kinzbach case involved a suit for damages between two historically fierce
competitors in the oil field tool business, Corbett-Wallace Corporation and Kinzbach Tool
Company. Id. at 510. The dispute involved Kinzbach's negotiated purchase of Corbett's sales-right contract on a patented tool. Because Corbett and Kinzbach were on unfriendly terms,
Corbett contacted G.E. Turner, one of Kinzbach's employees, to broker the sale. Corbett told
Turner that he would agree to sell the contract for no less than $20,000 and would pay Turner a
commission out of the sale price if the sale was completed. Turner then approached Kinzbach
about purchasing the contract but never disclosed that Corbett was willing to take as little as
$20,000, or that Turner himself was expecting a commission from the sale. In the end, Kinzbach
agreed to pay $25,000 for the contract, and Corbett promised Turner a commission of $5000. 
When Kinzbach found out about the inside deal, he sued both Turner and Corbett to have the
$5000 commission credited toward the price of the contract. 

 The supreme court found as a matter of law that Turner abused his fiduciary
relationship with Kinzbach by failing to fully disclose the nature of his dealings with Corbett. Id.
at 513-14. The court then went on to find Corbett liable as a joint tortfeasor. 


It is settled as the law of this State that where a third party knowingly participates
in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor
with the fiduciary and is liable as such. It follows that when Corbett employed
Turner, who it knew was Kinzbach's fiduciary, under the circumstances and
conditions we have already detailed, it became a party to the breach of duty
committed by Turner, and therefore became a joint tort-feasor with Turner with
regard to the rights of Kinzbach.



Id. at 514 (citations omitted).

 In the instant case, Wootten's allegations parallel the elements of the Kinzbach rule. 
He first asserts that he and Falcon had a fiduciary relationship. The Statesman's motion for
summary judgment is not asserted on a no-evidence basis; therefore, it is up to the jury to decide
whether such a fiduciary relationship existed. See Kline v. O'Quinn, 874 S.W.2d 776, 786 (Tex.
App.--Houston [14th Dist.] 1994, writ denied). Wootten also alleges that the Statesman knew of
Falcon's fiduciary duty to Wootten to preserve the dignity of his wife's body(1) and was aware that
it was participating in Falcon's breach of that duty. Whether the Statesman knowingly assisted
Falcon in any breach of his fiduciary duty is a question for the trier of fact. See Brewer &
Pritchard, P.C. v. Johnson, 7 S.W.3d 862, 868 (Tex. App.--Houston [1st Dist.] 1999, pet.
granted). It is important to note here that under a Kinzbach cause of action, the fiduciary's actions
determine the plaintiff's damages, if any. See Kinzbach, 160 S.W.2d at 514; Kirby v. Cruce, 688
S.W.2d 161, 166 (Tex. App.--Dallas 1985, writ ref'd n.r.e.). Wootten did not allege that the
Statesman owed him a fiduciary duty independent of Falcon's duty to preserve the dignity of his
wife's corpse. The Statesman may be held liable under Kinzbach if, by requesting access to view
and photograph Barbara Wootten's corpse for the article, the Statesman was aware that Falcon
would be breaching his fiduciary duty to Wootten by acquiescing. 

 The Statesman argues, however, that Wootten's joint tortfeasor cause of action
cannot succeed because under Kinzbach, there must be an independent, direct fiduciary
relationship between the plaintiff and the third party from whom the plaintiff seeks damages; such
a relationship was not alleged here. The Statesman misreads Kinzbach. In Kinzbach, the liable
joint tortfeasor Corbett did not owe any fiduciary duty to the plaintiff, his arch business rival. See
Kinzbach, 160 S.W.2d at 513-15. Corbett's liability arose out of his knowledge that his conduct
would lead Turner to breach Turner's fiduciary duty to Kinzbach. Id. at 514. Contrary to the
Statesman's contention, the court did not find that Corbett owed any duty to Kinzbach and did not
express that a separate fiduciary duty was necessary to hold Corbett liable as a joint tortfeasor. 
Cf. id. The court's only mention of a duty of fair dealing was in discussing Turner's fiduciary
duties as Kinzbach's employee. Id. at 512-14. 

 Similarly, the cases that follow Kinzbach do not allude to any requirement of an
independent fiduciary relationship between the plaintiff and the joint tortfeasor. See Brewer, 7
S.W.3d at 867; Kline, 874 S.W.2d at 786; Upjohn Co. v. Petro Chems. Suppliers, Inc., 537
S.W.2d 337, 338-39 (Tex. Civ. App.--Beaumont 1976, writ ref'd n.r.e.); see also City of Fort
Worth v. Pippen, 439 S.W.2d 660, 665 (Tex. 1969). In Pippen, the court explicitly pointed out
that the third party could be held liable as a joint tortfeasor under Kinzbach with or without
independent liability as a fiduciary. Pippen, 439 S.W.2d at 665. Again in Brewer, the court
plainly states that "any third party" may be held liable for knowingly aiding and assisting in the
breach of someone else's fiduciary duty. Brewer, 7 S.W.3d at 867.

 The Statesman next contends that it cannot be held liable to Wootten because
Wootten's agent, Falcon, had authority or apparent authority to allow the Statesman to observe
and photograph Wootten's dead wife. The Statesman asks us to bind Wootten as a principal to the
actions of his agent. We must therefore examine the law of agency itself to determine whether the
Statesman's position can defeat Wootten's Kinzbach cause of action as a matter of law. 

 There are two types of authority of an agent: actual and apparent. Ebner v. First
State Bank, 27 S.W.3d 287, 300 (Tex. App.--Austin 2000, pet. filed). "Actual authority is
authority that the principal intentionally conferred on the agent or allowed the agent to believe was
conferred." Id. Apparent authority, however, is based on estoppel. Douglass v. Panama, Inc.,
504 S.W.2d 776, 778 (Tex. 1974). One seeking to bind a principal through its agent must show
that the principal's conduct would lead a reasonably prudent person to suppose that the agent had
the authority he purported to exercise. Id. at 778-79 (emphasis added). See also NationsBank,
N.A. v. Dilling, 922 S.W.2d 950, 952-53 (Tex. 1996); Ebner, 27 S.W.3d at 300. The principal
must have affirmatively held out the agent as possessing the authority or must have knowingly and
voluntarily allowed the agent to act in an unauthorized way. Dilling, 922 S.W.2d at 953. 

 In the instant case, the Statesman does not offer any proof that Wootten expressly
gave Falcon the authority to allow access to his wife's corpse. In fact, Wootten allegedly gave
Falcon explicit instructions not to let anyone view the body. Taking the evidence favorable to
Wootten as true, it cannot be said that Falcon had the actual authority to allow the Statesman
access to Barbara Wootten's corpse. 

 Nor has the Statesman asserted any act on Wootten's part that led it to reasonably
conclude that Falcon had the apparent authority to allow the Statesman to view and photograph
the corpse. In fact, the record indicates that the photographer did not know who Wootten was or
that Wootten gave any specific instructions to Falcon. The Statesman has not conclusively
demonstrated that Wootten affirmatively held out Falcon as authorized, nor has the Statesman
shown that Wootten knowingly and voluntarily allowed Falcon to act in an unauthorized manner. 
See id. Wootten did not know that the Statesman was preparing a story on Falcon's funeral home
until he read the article several months after the photographs were taken. Again, resolving all
inferences in favor of Wootten, we cannot say as a matter of law that Falcon had apparent
authority to give the Statesman access to Barbara Wootten's remains. The Statesman's third point
of error is overruled. 

 Finally, the Statesman argues that it should not be held liable because its actions
are privileged from tort liability under the First Amendment and article 1, section 8 of the Texas
Constitution.(2) The Statesman, however, fails to cite any authority that would lead us to conclude
that the Statesman should be relieved of liability on the facts of this case. See Florida Star v.
B.J.F., 491 U.S. 524, 538-39 (1989) (holding state statute banning media use of rape victims'
names not narrowly tailored to impose liability on media when state government itself provided
information to the media); Cox Broad. Corp. v. Cohn, 420 U.S. 469, 496-97 (1975) (reversing
civil damages entered against television station for releasing rape victim's name obtained from
public court documents); Hogan v. Hearst Corp., 945 S.W.2d 246, 250-51 (Tex. App.--San
Antonio 1997, no writ) (dismissing invasion of privacy claim based on publication of public arrest
record); Wavell v. Caller-Times Publ'g Co., 809 S.W.2d 633, 636 (Tex. App.--Corpus Christi
1991, writ denied) (refusing to impose civil damages in privacy action based on published articles
recounting testimony and documents revealed during judicial proceedings); McNamara v. Freedom
Newspapers, Inc., 802 S.W.2d 901, 905 (Tex. App.--Corpus Christi 1991, writ denied)
(upholding newspaper's right to publish photograph taken at public high school soccer game).

 These cases address the Statesman's immunity from liability for publishing
information obtained from particular public sources. The Statesman's publication of the
photographs of Wootten's wife, however, is not the basis of the Kinzbach cause of action in this
case. The damages that may be awarded under a Kinzbach cause of action flow directly from the
breach of fiduciary duty; the third party who knowingly participates in that breach may be held
jointly and severally liable for those damages. See Kinzbach, 160 S.W.2d at 514; Kirby, 688
S.W.2d at 166. Because it is Falcon's actions that control the damages awarded in this case under
Kinzbach, the Statesman's immunity from publication liability is not relevant. As the Statesman
itself points out in its reply brief, "The cause of any harm to Mr. Wootten's sensibilities arises
from the events that allegedly occurred in the funeral home, not the Statesman's report of those
events." We express no opinion as to whether the Statesman is foreclosed from making free-speech arguments which defend its role in Falcon's alleged breach because the Statesman did not
present any such argument to the trial court. See Tex. R. Civ. P. 166a(c); Tex. R. App. P.
33.1(a)(1)(A). For the same reason, we may not consider the Statesman's contention that Wootten
cannot show that he has suffered any damages from the Statesman's actions. See Tex. R. Civ. P.
166a(c); Tex. R. App. P. 33.1(a)(1)(A).

 We hold that Wootten has stated a viable cause of action under Kinzbach. The Statesman has
not sufficiently demonstrated that there is no genuine issue of material fact with regard to
Wootten's claim that the Statesman participated as a joint tortfeasor in Falcon's breach of the
fiduciary duty owed to Wootten. We overrule the Statesman's first and third points of error and
part of the fourth point of error, and affirm the trial court's denial of summary judgment on
Wootten's Kinzbach cause of action for participation in another's breach of fiduciary duty. 

 B. Breach of Contract and Tortious Interference with Contract

 Wootten also contends that under Kinzbach, the Statesman is liable for Falcon's
breach of contract. Wootten states that "the Statesman is liable as a joint tortfeasor with Falcon
for breaching the duty 'to protect the dignity of the deceased and the deceased's family' and for
violating the 'specific instructions given to Falcon that there was to be no viewing of Mrs.
Wootten's body.'" Although we have found that Wootten may go forward on his joint tortfeasor
claim for breach of fiduciary duty, Wootten cannot recover contract damages from the Statesman.

 The Statesman was not a party to the contract between Wootten and Falcon. As a
general rule, contract damages may not be obtained from a person who was not a party to the
contract. Bernard Johnson, Inc. v. Continental Constructors, Inc., 630 S.W.2d 365, 369 (Tex.
App.--Austin 1982, writ ref'd n.r.e.). Alternatively, however, damages may be sought from a
third party for tortious interference with a contract. In order to succeed on such a claim, the
plaintiff must show, among other things, that the third party intentionally interfered with the
contract. See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 664 (Tex.
1990). Because Wootten does not maintain that the Statesman knew of his specific instructions
to Falcon, Wootten cannot successfully allege intentional interference with that agreement. 
Further, we find no authority for the proposition that Kinzbach allows for recovery for any breach
of contract. We sustain the Statesman's fourth point of error to the extent that Wootten is seeking
contract damages from the Statesman for Falcon's breach of promise to Wootten.


II. Emotional Distress

 In its sixth point of error, the Statesman asserts that the trial court erred in failing
to grant summary judgment on Wootten's claim for intentional infliction of emotional distress. 
Wootten's pleadings do not make any explicit claim for intentional infliction of emotional distress,
and he does not seem to support any such cause of action on appeal. Wootten does, however,
maintain that he is entitled to damages for the Statesman's negligent infliction of emotional
distress, and the Statesman has attacked this claim as well. Wootten has not set forth facts
sufficient to support either of these causes of action.


 A. Negligent Infliction

 Texas does not generally recognize a cause of action for negligent infliction of
emotional distress. Boyles v. Kerr, 855 S.W.2d 593, 597 (Tex. 1993). A claimant may recover
damages for mental anguish only in connection with the defendant's breach of some other legal
duty. Id. There must be some specific duty of care that arises from the relationship between the
parties. Id. at 600. An exception to this rule is allowed for a bystander who witnesses a serious
or fatal accident. Id. at 597-98. In this case, there is no special relationship between Wootten and
the Statesman, and Wootten does not claim to be a bystander. Thus, Wootten cannot recover
damages for mental anguish under a negligent infliction cause of action. See id. at 600. 


 B. Intentional Infliction

 Wootten does not specifically allege that he is entitled to intentional infliction
damages, but his pleadings do contain a description of the Statesman's actions as outrageous
conduct that should not be tolerated. Because this issue was raised in the trial court, in the interest
of judicial economy we will address the Statesman's concerns about this possible cause of action. 

 Intentional infliction of emotional distress arises when (1) the defendant acts
intentionally or recklessly, (2) the defendant's conduct is extreme and outrageous, (3) the actions
of the defendant cause the plaintiff emotional distress, and (4) that emotional distress is severe. 
Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). Intentional infliction does not include
mere insults, indignities, threats, annoyances, or other trivialities. Soto v. El Paso Natural Gas
Co., 942 S.W.2d 671, 681 (Tex. App.--El Paso 1997, writ denied). Whether conduct is extreme
and outrageous enough to qualify for the tort of intentional infliction is a question of law. 
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). 

 Wootten has failed to state a cause of action for intentional infliction of emotional
distress. He contends that the damages he has sustained are the direct and proximate result of the
Statesman's negligent actions. Negligent conduct is neither intentional nor reckless. Such
allegations cannot support a cause of action for intentional infliction. 

 Even if we construe the plaintiff's pleadings liberally so as to include intentional
conduct, Wootten's allegations still fail as a matter of law because the Statesman's conduct cannot
be said to be so outrageous as to be totally intolerable in a civilized society. See Twyman, 855
S.W.2d at 621. Taking pictures of a dead body is not intolerable; in fact, such pictures are
frequently taken in a variety of situations. Publication of the rather dignified, albeit unauthorized,
pictures of Barbara Wootten's body was not extreme and outrageous.(3)


It has not been enough that the defendant has acted with an intent that is tortious
or even criminal, or that he has intended to inflict emotional distress, or even that
his conduct . . . would entitle the plaintiff to punitive damages for another tort. 
The conduct must be "so outrageous in character, and so extreme in degree, as to
go beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community."



Brewerton v. Dalrymple, 997 S.W.2d 212, 215-16 (Tex. 1999) (citations omitted). We sustain
the Statesman's sixth point of error.


III. Common-Law Negligence

 Wootten asserts, outside of the pleadings, an independent cause of action against
the Statesman for common-law negligence. Wootten's petition only alleges the Statesman's
negligence in terms of its liability as a joint tortfeasor under Kinzbach. The pleadings state that
the "Statesman's participation as a joint-tortfeasor in breaching the contract was the result of the
Statesman's negligence" and describe the Statesman's "negligence in breaching the fiduciary duty
owed to plaintiff." From the record, then, it is evident that Wootten did not raise an independent
negligence claim in his pleadings despite Wootten's attempts in his response to the Statesman's
motion for summary judgment and briefs to recast his pleadings as asserting a separate negligence
cause of action. Further, when asked at oral argument to clarify the causes of action he was
alleging, Wootten answered that his claims against the Statesman were limited to joint-tortfeasor
liability and negligent infliction of emotional distress. Wootten did not amend his pleadings to
reflect any additional negligence cause of action. The trial court could not have reached an
independent negligence claim that was not before it. See Grant v. Southwestern Elec. Power Co.,
20 S.W.3d 764, 776 (Tex. App.--Texarkana 2000, pet. granted). We, likewise, may not address
this issue. See Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1(a)(1)(A). The Statesman's fifth
point of error is overruled.




IV. Invasion of Privacy

 In point of error two, the Statesman contends that the trial court erred in failing to
grant its motion for summary judgment on all claims because Wootten essentially alleged invasion
of privacy causes of action that fail as a matter of law. The Statesman states that Wootten, "having
no viable claim for invasion of privacy, recharacterized his claims . . . under the theories of
negligence, breach of contract, tortious interference with contract, and breach of fiduciary duty." 
The Statesman explains that Wootten cannot prevail on an invasion of privacy claim for the
publication of information about the dead because the right of privacy terminates upon the death
of the person whose privacy is invaded. See Moore v. Charles B. Pierce Film Enters., Inc., 589
S.W.2d 489, 491 (Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.). The Statesman also
maintains that Wootten failed to satisfy the elements of an invasion of privacy claim that the
Statesman violated Wootten's own privacy. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471,
473-74 (Tex. 1995).

 The Statesman asserts that Wootten is using artful pleading to circumvent the law
of invasion of privacy to avoid the constitutional restraints imposed on those claims. See, e.g.,
Brueggemeyer v. Associated Press, 609 F.2d 825, 826 (5th Cir. 1980) (holding that accurate
reporting of newsworthy events does not fall within the tort of invasion of privacy); cf. KTRK
Television, Inc. v. Fowkes, 981 S.W.2d 779, 790-91 (Tex. App.--Houston [1st Dist.] 1998, pet.
denied) ("When a nonlibel claim is based on the same speech giving rise to a libel claim, a plaintiff
must prove the falsity of the alleged libelous speech. To hold otherwise would permit litigants to
circumvent constitutional defenses against the tort of libel by pleading torts that do not require
falsity or actual malice." (citations omitted)). The issue, however, is not whether Wootten has
artfully pleaded a cause of action for invasion of privacy. See Bernard Johnson, 630 S.W.2d at
367. Rather, the issue is whether Wootten's allegations, when taken as true, invoke a rule of
substantive law that will afford him relief based on the wrong he attributes to the Statesman. See
id. Because we have held that Wootten's allegations state a viable cause of action under Kinzbach,
we overrule the Statesman's second point of error.


CONCLUSION

 We find that Wootten has stated a viable cause of action against the Statesman as
a joint tortfeasor for participating in Falcon's alleged breach of fiduciary duty. We affirm the trial
court's denial of summary judgment on that cause. Because Wootten did not properly plead a
common-law negligence claim, we hold that the trial court correctly refused to address summary
judgment on a claim not before it. We hold that the Statesman is entitled to summary judgment
on Wootten's claims for intentional infliction of emotional distress, negligent infliction of
emotional distress, and breach of contract. We therefore reverse the trial court's order as to those
causes of action and render judgment that Wootten take nothing on those causes.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed: January 11, 2001

Do Not Publish

1. The Statesman's photographer acknowledged in his deposition that one of Falcon's
obligations is to preserve the dignity of the corpses in his care.
2. Because we find that Wootten's only viable cause of action arises under Kinzbach, we do not
decide whether the Statesman would be immune from liability for any of the other torts Wootten
has pled. See Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509 (Tex. 1942)
3. We do not consider whether the Constitution would protect a publication that was extreme
and outrageous.


nt-tortfeasor
liability and negligent infliction of emotional distress. Wootten did not amend his pleadings to
reflect any additional negligence cause of action. The trial court could not have reached an
independent negligence claim that was not before it. See Grant v. Southwestern Elec. Power Co.,
20 S.W.3d 764, 776 (Tex. App.--Texarkana 2000, pet. granted). We, likewise, may not address
this issue. See Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1(a)(1)(A). The Statesman's fifth
point of error is overruled.




IV. Invasion of Privacy

 In point of error two, the Statesman contends that the trial court erred in failing to
grant its motion for summary judgment on all claims because Wootten essentially alleged invasion
of privacy causes of action that fail as a matter of law. The Statesman states that Wootten, "having
no viable claim for invasion of privacy, recharacterized his claims . . . under the theories of
negligence, breach of contract, tortious interference with contract, and breach of fiduciary duty." 
The Statesman explains that Wootten cannot prevail on an invasion of privacy claim for the
publication of information about the dead because the right of privacy terminates upon the death
of the person whose privacy is invaded. See Moore v. Charles B. Pierce Film Enters., Inc., 589
S.W.2d 489, 491 (Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.). The Statesman also
maintains that Wootten failed to satisfy the elements of an invasion of privacy claim that the
Statesman violated Wootten's own privacy. See Star-Telegram, Inc. v. Doe, 9